**Wacks & Hartmann, LLC**
Attorneys at Law
55 Madison Avenue, Suite 320A
Morristown, NJ 07960-7397
(973) 644-0770
Attorney of Record: Philip D. Stern
Attorneys for Plaintiff, Mark A. Apostolou,
and all others similarly situated

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK A. APOSTOLOU, an individual; on behalf of himself and all others similarly situated,<br><br>          Plaintiffs,<br><br>     vs.<br><br>ACCREDITED COLLECTION AGENCY, INC., a New Jersey Corporation; JEFFREY A. WINTERS, individually and in his official capacity; LAW OFFICE OF NORMAN G. KALINA a/k/a  LAW OFFICE OF KALINA & ASSOCIATES a/k/a KALINA & ASSOCIATES; an entity of unknown type or origin; NORMAN G. KALINA, ESQ., individually and in his official capacity; and JOHN AND JANE DOES NUMBERS 1 THROUGH 50, BEING FICTITIOUS NAMES OF UNIDENTIFIED PERSONS WHO CONTROL THE POLICIES AND PRACTICES INVOKED BY PROFESSIONAL RECOVERY SERVICES, INC. AND KALINA & ASSOCIATES,<br><br>          Defendants. | Civil Action No. _____<br><br><br>**CLASS ACTION COMPLAINT**<br>**and**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff, MARK A. APOSTOLOU, on behalf of himself and all those similarly situated, by way of Complaint against Defendants, says:

## I. PARTIES

1.      MARK A. APOSTOLOU ("APOSTOLOU") is a natural person who, at all times relevant to this complaint, resided in the Township of Livingston, Essex County, New Jersey.

2.      At all times relevant to this complaint, ACCREDITED COLLECTION AGENCY, INC. ("ACAI") is a for-profit corporation existing pursuant to the laws of the State of New Jersey. ACAI maintains its principal business address at 38 East Ridgewood Avenue, # 350, in the Township of Ridgewood, Bergen County, New Jersey.

3.      At all times relevant to this complaint, JEFFREY A. WINTERS ("WINTERS") is a natural person who resided at 586 Roosevelt Boulevard, Township of Paramus, Bergen County, New Jersey.

4.      At all times relevant to this complaint, LAW OFFICE OF NORMAN G. KALINA a/k/a  LAW OFFICE OF KALINA & ASSOCIATES a/k/a KALINA & ASSOCIATES ("K&A") is a law firm of unknown type or origin existing pursuant to the laws of the State of New Jersey. K&A maintains its principal business address at 38 East Ridgewood Avenue, # 350, in the Township of

Ridgewood, Bergen County, New Jersey.

5.     At all times relevant to this complaint, NORMAN G. KALINA ("KALINA") is a natural person who resided at 49 Shongum Road, Township of Randolph, Morris County, New Jersey.

6.     Defendants, JOHN AND JANE DOES NUMBERS 1 THROUGH 50, are sued under fictitious names as their true names and capacities are yet unknown to Plaintiff. Plaintiff will amend this complaint by inserting the true names and capacities of these DOE defendants once they are ascertained.

## II.  JURISDICTION & VENUE

7.     Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

8.     Venue is appropriate in this federal district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff' claims occurred within this federal judicial district, and because all the Defendants reside in the State of New Jersey within the meaning of 28 U.S.C. § 1391(b) and (c) by, in the case of the individual Defendants, maintaining a residence in the State of New Jersey or, in the case of the corporate Defendants, being subject to personal jurisdiction in the State of New Jersey at the time this action is commenced.

## III.  PRELIMINARY STATEMENT

9.     Plaintiff, on his own behalf and on behalf of the class he seeks to

represent, and demanding a trial by jury, brings this action for the illegal practices of the Defendants who used false, deceptive and misleading practices, and other illegal practices, in connection with their attempts to collect alleged debts from the Plaintiff and others. Plaintiff alleges that the Defendants' collection practices violate the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA").

10.    Such practices include, *inter alia*:

(a)    Sending false, deceptive, and misleading written communications to consumers;

(b)    Leaving telephonic voice messages for consumers and others, which fail to provide meaningful disclosure of Defendants' identity;

(c)    Leaving telephonic voice messages for consumers, which fail to disclose that the call is from a debt collector; and

(d)    Leaving telephonic voice messages for consumers, which fail to disclose the purpose or nature of the communication (i.e. an attempt to collect a debt).

11.    The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection

practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(a) - (e).

12.     The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. The Third Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer." *Graziano v. Harrison,* 950 F.2d 107, 111, fn5 (3d Cir. 1991).

13.     The FDCPA applies to lawyers regularly engaged in consumer debt-collection litigation. *Heintz v. Jenkins*, 514 U.S. 291 (1995); *Piper v. Portnoff Law Associates*, 396 F.3d 227, 232 (3d Cir. 2005).

14.     To prohibit harassment and abuses by debt collectors the FDCPA, at 15 U.S.C. § 1692d, provides that a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt and names a non-exhaustive list of certain *per se* violations of harassing and abusive collection conduct. 15 U.S.C. § 1692d(1)-(6). Among the *per se* violations is the placement of telephone calls

without meaningful disclosure of the caller's identity, 15 U.S.C. § 1692d(6).

15.     To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection letters and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e(1)-(16). Among these *per se* violations are: false representations or implications that any individual is an attorney or that any communication is from an attorney, 15 U.S.C. § 1692e(3); the failure by debt collectors to disclose in initial oral communications that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent oral communications with consumers that the communication is from a debt collector, 15 U.S.C. § 1692e(11).

16.     The Plaintiff, on behalf of himself and all others similarly situated, seeks statutory damages, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court, pursuant to the FDCPA and all other common law or statutory regimes. The Plaintiff, on behalf of himself and all others similarly situated, request that he and the class members be awarded statutory, common law, or actual damages payable by the Defendants.

## IV. FACTS REGARDING PLAINTIFF

17.     Sometime prior to May 18, 2007, APOSTOLOU allegedly incurred a financial obligation to InstantCash arising out of a transaction in which the money,

property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes and defaulted on that obligation ("InstantCash Obligation").

18.    The alleged InstantCash Obligation is a "debt" as defined by 15 U.S.C. §1692a(5).

19.    APOSTOLOU is, at all times relevant to this complaint, a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

20.    APOSTOLOU is informed and believes, and on that basis alleges, that sometime prior to May 18, 2008, InstantCash either directly or through *mesne* transactions assigned, placed, transferred, or sold the debt to Defendants for collection.

21.    ACAI collects, and attempts to collect, debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

22.    ACAI is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

23.    K&A collects, and attempts to collect, debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

24.    K&A is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

25.    KALINA collects, and attempts to collect, debts incurred, or alleged

to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

26.     KALINA is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

27.     In an attempt to collect the InstantCash Obligation, Defendants sent APOSTOLOU a letter dated May 18, 2007 ("ACA Letter"). A true and correct copy of the ACA Letter is attached as Exhibit A.

28.     The ACA Letter is a "communication" as defined by 15 U.S.C. § 1692a(2).

29.     The top of the ACA Letter lists "Norman G. Kalina" as being "of counsel" to ACAI.

30.     The ACA Letter states, *inter alia*, that "[i]f alleged debt is disputed or paid -Please notify us in writing."

31.     The statement referenced above in Paragraph 31 is false, deceptive and misleading insofar as it falsely implies that any dispute regarding the InstantCash Obligation must be conveyed in writing when, in fact and law, a consumer may orally advise a collection agency that he or she disputes a debt set forth in a collection letter sent by a debt collection agency.

32.     In a further attempt to collect the InstantCash Obligation, Defendants sent APOSTOLOU a letter dated June 22, 2007 ("K&A Letter"). A true and correct copy of the K&A Letter is attached as Exhibit B.

33.     The K&A Letter is a "communication" as defined by 15 U.S.C. § 1692a(2).

34.     The K&A Letter is printed on the letterhead of "Norman G. Kalina, Esq.".

35.     The First Paragraph of the K&A Letter informs APOSTOLOU that "this office represents [InstantCash]…."

36.     The Second Paragraph of the K&A Letter informs APOSTOLOU that "[KALINA'S] client provided services to [APOSTOLOU] and [APOSTOLOU] accepted these services in a[n] enforceable contract in the amount of $545.00."

37.     The Third Paragraph of the K&A Letter informs APOSTOLOU that he has "**both a moral and legal obligation to repay them**." (Emphasis in original).

38.     The K&A Letter and is signed "Very truly yours," with a facsimile signature by "Norman G. Kalina, Esq.".

39.     APOSTOLOU perceived that the K&A Letter was in fact the work product of a licensed attorney who had reviewed the particular circumstances of his account, as there was neither a disclosure nor any admonition indicating otherwise.

40.     Although the K&A Letter that "[W]e are debt collectors," that statement does not rule out the possibility that the letter is from a licensed attorney,

as attorneys can be debt collectors.

41.    Upon receiving the K&A Letter and learning that InstantCash was now "represented" by a law firm in connection with the collection of the InstantCash Obligation, APOSTOLOU reasonably inferred – as would a "least sophisticated consumer" – that the Defendants might actually file a civil lawsuit against him to recover the alleged debt.

42.    Defendants intended that the K&A Letter imply a heightened severity over dunning letters from non-attorney collection companies, such as ACAI, and that the least sophisticated consumer react with a commensurate level of alarm and concern.

43.    Sometime after receiving the K&A Letter, APOSTOLOU became informed and now believes, and on that basis alleges, that the K&A Letter is actually a computer-generated, mass-produced, letter that did not receive any meaningful review or involvement by a licensed attorney prior to mailing.

44.    Beginning in or about May 2007, and continuing for several months thereafter, APOSTOLOU began receiving a series of "live" telephonic voice messages ("Live Messages") on his cellular telephone. Each of these Live Messages essentially followed the same scripts:

> This is a legal business message for Mark Apostolou. My name is Mrs. Owens, I'm calling from the Law Office of Kalina & Associates. It is very important that you contact our office within the next 24

hours. 1-800-356-3713. Please reference Case Number 749736. Thank you.

--and--

Mark Apostolou, this is Mrs. James calling from the Law Office of Norman G. Kalina. It is imperative that you return my call immediately. The number is 800-356-3713 and reference the Case Number 749736.

--and--

Hi, Mark Apostolou, this is Ms. [inaudible] calling from ACA Recovery. It is imperative that you return my call immediately. The number is 800-356-3713 and reference Case Number 749736.

45.    Each of the Live Messages is a "communication" as defined by 15 U.S.C. § 1692a(2).

46.    Each of the Live Messages was left by persons employed as debt collectors by Defendants in connection with the collection of a debt.

47.    Each of the Live Messages and APOSTOLOU Recorded Messages are false, deceptive, and misleading in that the natural consequence of these communications is to harass, oppress, or abuse the least sophisticated debtor and other persons in violation of the FDCPA.

48.    Each of the Live Messages and APOSTOLOU Recorded Messages are false, deceptive, and misleading insofar as ACAI failed to give meaningful disclosure of its identity, disclose the purpose of its call, or disclose that it is a debt collector, thereby circumventing Congress's intent to permit APOSTOLOU to

make an informed decision as to whether she wished to speak with a debt collector.

49.    Whatever minor variations that may exist, each of the Live Messages and APOSTOLOU Recorded Messages uniformly failed to:

(a)    Provide meaningful disclosure of Defendants' identity as the caller;

(b)    Disclose that the communication was from a debt collector;

(c)    Disclose the purpose or nature of the communication (i.e., an attempt to collect a debt); and

(d)    Convey a false sense of urgency to consumers.

50.    In response to the Live Messages, APOSTOLOU made several calls to the telephone number left for him in the Live Messages and spoke with Mrs. James and other persons employed by Defendants.

51.    During several of his calls to Defendants, APOSTOLOU was told by Ms. James and others that he would be prosecuted and pursued via a civil lawsuit if he failed to make immediate payment for the alleged InstantCash Obligation.

52.    During each of his calls to Defendants, APOSTOLOU was repeatedly placed on hold, at which time he was subjected to the following continuous pre-recorded voice message ("Pre-Recorded Voice Message"):

> Sometimes it's an honest mistake, other times it's a deliberate attempt to defraud. Return checks that remain unpaid violate nearly every states' criminal code. The Check Enforcement Bureau will assist you in making timely restitution. One of our agents will be with you

shortly. Please stand by.

Check Fraud is a serious matter. Various state statutes govern the enforcement of bad checks. Dishonored checks are typically treated as criminal matters in state courts. Eliminate the possibility of further action and make restitution today. Our agents will assist you in making immediate restitution. Someone will be with you shortly.

The Check Enforcement Bureau advises you that failing to make restitution for dishonored checks exposes you to the possibility of civil and criminal action. Check Fraud is a serious matter. The Check Enforcement Bureau recommends the maximum penalties as prescribed by law. Avoid legal action and make restitution today. You can remit your payment immediately via Quick Collect Western Union, Code City: "Jeff, J-E-F-F"; State: New Jersey. Please hold on.

Check Fraud is a growing problem. Local authorities are actively prosecuting bad check writers all over the United States. The Check Enforcement Bureau will assist you in resolving your outstanding bad checks. Don't allow your bad checks to become an even bigger problem. Our representatives can show you how to close this matter today. Please hold on for one of our agents.

53.     The Defendants' Pre-Recorded Voice Message is false, deceptive, and misleading in that the natural consequence of these communications is to harass, oppress, or abuse the least sophisticated debtor and other persons in violation of the FDCPA in violation of 15 U.S.C. § 1692e, and appropriate subsections thereof.

54.     At no time during any of his telephone calls to Defendants, was APOSTOLOU ever advised that his communication was with a debt collector, or that the purpose of the communication was an attempt to collect a debt.

55.     On numerous occasions over the course of the past several months,

the undersigned counsel, and New York Attorney, Robert L. Arleo, have engaged KALINA verbally and in writing and explained each of the Defendants' FDCPA violations complained of herein and requested that he and the other Defendants cease such future FDCPA violations; KALINA advised that the Defendants have no intention of reforming their errant ways and invited Plaintiff to file this class action lawsuit.

56.   Defendants have been sued on numerous previous occasions for violating the FDCPA, *inter alia*, in the same manner alleged in this complaint.  In many of these complaints, the Defendants have admitted the allegations by virtue of defaulting to the lawsuit.

## V.  POLICIES AND PRACTICES COMPLAINED OF

57.   It is the Defendants' policy and practice to send written collection communications, in the form attached as Exhibit A, in connection with the collection of alleged consumer debts, which make false, deceptive, and misleading representations that consumers must dispute their alleged debts "in writing" with Defendants to be considered effective.

58.   It is the Defendants' policy and practice to send written collection communications, in the form attached as Exhibit B, in connection with the collection of alleged consumer debts, which make false, deceptive, and misleading

representations that any person is an attorney or that any communication is from an attorney.

59.     "Abuses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's improper threat of legal action than to a debt collection agency committing the same practice." *Crossley v. Lieberman*, 868 F.2d 566, 570 (3d Cir. 1989).

60.     "A debt collection letter on an attorney's letterhead conveys authority and credibility." *Crossley v. Lieberman*, 868 F.2d 566, 570 (3d Cir. 1989).

61.     Via their debt collection policies and procedures, K&A and KALINA have simply substituted the judgment of its non-attorney support staff, and the non-attorney support staff of ACAI, for the judgment of KALINA or any actual and duly admitted attorney(s) at law.

62.     The Defendants' debt collection policies and procedures indicate that the Defendants engage in "shot-in-the dark" chances that the information set forth in debt collection communications sent by the non-attorney debt collectors employed by ACAI, under the letterhead of the K&A and KALINA, is correct.

63.     Neither K&A, nor KALINA, know the identities of persons to whom debt collection communications were sent.

64.     KALINA oversaw and permitted the improper mixing and intermingling of a debt collector (i.e. ACAI) and a law firm (i.e. K&A).

65.    It is the policy and practice of Defendants to leave telephonic voice messages for consumers and other persons, such as the Live Messages, which uniformly fail to:

(a)    Provide meaningful disclosure of Defendants' identity as the caller;

(b)    Disclose that the communication was from a debt collector;

(c)    Disclose the purpose or nature of the communication (i.e., an attempt to collect a debt); and

(d)    Convey a false sense of urgency to consumers.

66.    The Live Messages, as alleged in this complaint, number in the thousands, all of which uniformly fail to:

(a)    Provide meaningful disclosure of Defendants' identity as the caller;

(b)    Disclose that the communication was from a debt collector;

(c)    Disclose the purpose or nature of the communication (i.e., an attempt to collect a debt); and

(d)    Convey a false sense of urgency to consumers.

67.    It is the policy and practice of Defendants to make false, deceptive, and misleading representations or implications to consumers, such as the Defendants' Pre-Recorded Voice Message, that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person when such action is

unlawful, and which in any event Defendants never intend to take such action.

68.    It is the policy and practice of Defendants to falsely threaten consumers with action that cannot legally be taken or that is not intended to be taken.

69.    It is the policy and practice of Defendants to make false, deceptive, and misleading representations or implications to consumers, that the consumer committed any crime or other conduct in order to disgrace the consumer.

70.    WINTERS collects, and attempts to collect, debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

71.    WINTERS is, at all times relevant to this complaint, a "debt collector" as defined by 15 U.S.C. § 1692a(6).

72.    WINTERS is the President and owner of ACAI. WINTERS personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with and oversaw policies and procedures used by ACAI employees that are the subject of this complaint.

73.    The Plaintiff is informed and believe, and on that basis allege, that Defendants, JOHN AND JANE DOES NUMBERS 1 THROUGH 25, are natural persons and/or business entities all of whom reside or are located within the United States who personally created, instituted and, with knowledge that such practices

were contrary to law, acted consistent with and oversaw policies and procedures used by the employees of ACAI and K&A that are the subject of this complaint. Those Defendants personally control the illegal acts, policies, and practices utilized by ACAI and K&A and, therefore, are personally liable for all of the wrongdoing alleged in this complaint.

## VI.  CLASS ALLEGATIONS

74.    This action is brought as a class action. Plaintiff brings this action on behalf of themselves and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

75.    The First Plaintiff Class consists of: (i) all persons with addresses in the United States of America; (ii) to whom ACAI sent a letter in the form attached as Exhibit A; (iii) in an attempt to collect a debt that was incurred for personal, family, or household purposes; (iv) which was not returned as undelivered by the United States Postal Service; (v) during the one year immediately preceding the filing of this complaint through the date of class certification.

76.    The Second Plaintiff Class consists of: (i) all persons with addresses in United States of America; (ii) who received a "live" or pre-recorded telephonic voice message from ACAI; (iii) which message failed to meaningfully identify ACAI as the caller, disclose that the communication was from a debt collector, state the purpose or nature of the communication (i.e. an attempt to collect a debt),

or created a false sense of urgency; and (iv) which was left after one-year immediately preceding the filing of this complaint up through and including the date of preliminary class certification.

77.    The Third Plaintiff Class consists of: (i) all persons with addresses in the United States of America; (ii) to whom K&A and KALINA sent a letter in the form attached as Exhibit B; (iii) in an attempt to collect a debt that was incurred for personal, family, or household purposes; (iv) which was not returned as undelivered by the United States Postal Service; (v) during the one year immediately preceding the filing of this complaint through the date of class certification.

78.    The Fourth Plaintiff Class consists of: (i) all persons with addresses in United States of America; (ii) who received a "live" or pre-recorded telephonic voice message from K&A and KALINA; (iii) which message failed to meaningfully identify K&A and KALINA as the caller, disclose that the communication was from a debt collector, state the purpose or nature of the communication (i.e. an attempt to collect a debt), or created a false sense of urgency; and (iv) which was left after one-year immediately preceding the filing of this complaint up through and including the date of preliminary class certification.

79.    The Fifth Plaintiff Class consists of: (i) all persons with addresses in United States of America; (ii) who contacted Defendants via telephone; (iii) whose

telephone call was place on hold; and (iv) and who listened to the Defendants' Pre-Recorded Voice Message after one-year immediately preceding the filing of this complaint up through and including the date of preliminary class certification.

80.   The identities of all class members are readily ascertainable from the records of Defendants and those companies and governmental entities on whose behalf Defendants attempt to collects debts.

81.   Excluded from the class are the Defendants and all officers, partners, managers, and directors of Defendants, their respective employees and officers, and their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

82.   The class period is one year prior to the filing of the complaint in this action for all claims under the FDCPA and continues up to and including the date of preliminary class certification.

83.   There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members. The principal issues are:  (i) whether the written communications to consumers, in the form attached as Exhibit A, violates 15 U.S.C. §1692e, and appropriate subsections thereof; (ii) whether the written communications to consumers, in the form attached as Exhibit B, violates 15 U.S.C. §1692e, and appropriate subsections thereof; and (iii) whether the Defendants' respective

telephonic voice messages, such as the Live Messages, violate 15 U.S.C. §§ 1692d(6), 1692e(11), and 1692e(10).

84.    The Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories.

85.    The Plaintiff will fairly and adequately protect the interests of the class defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues and class actions, and neither the Plaintiff nor his attorneys has any interests, which might cause them not to vigorously pursue this action.

86.    This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

(a)    **Numerosity:** The Plaintiff is informed and believes, and on that basis alleges, that the class defined above is so numerous that joinder of all members would be impractical.

(b)    **Common Questions Predominate:** Common questions of law and fact exist as to all members of the Plaintiff classes and those questions predominate over any questions or issues involving only individual class members. The principal issues are: (i) whether the written communications to consumers, in the form attached as Exhibit A,

violates 15 U.S.C. §1692e, and appropriate subsections thereof; (ii) whether the written communications to consumers, in the form attached as Exhibit B, violates 15 U.S.C. §1692e, and appropriate subsections thereof; and (iii) whether the Defendants' respective telephonic voice messages, such as the Live Messages, violate 15 U.S.C. §§ 1692d(6), 1692e(11), and 1692e(10).

(c)   **Typicality:** The Plaintiff's claims are typical of the claims of the class members alleged herein. Plaintiff and all members of the Plaintiff classes alleged herein have claims arising out of the Defendants' common uniform course of conduct complained of herein.

(d)   **Adequacy:** The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are adverse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits and complex legal issues. Neither the Plaintiff nor his counsel has any interests, which might cause them not to vigorously pursue the instant class action lawsuit.

(c)   **Superiority:** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class

action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender. An important public interest will be served by addressing the matter as a class action, substantial expenses to the litigants and to the judicial system will be realized, and the potential inconsistent or contradictory adjudications will be avoided as contemplated by Rule 23(b)(1) of the Federal Rules of Civil Procedure.

87.     Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

(a)     The questions of law and fact common to members of the class predominate over any questions affecting an individual member; and

(b)     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## VII.  FIRST CAUSE OF ACTION
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## (AGAINST ACAI AND WINTERS)

88.     Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint as if set forth at length herein.

89.     ACAI and WINTERS violated the FDCPA. The violations by ACAI

and WINTERS with respect to their written communications in the form attached hereto as Exhibit A include, but are not limited to, the following:

    (a)    Making false, deceptive, and misleading statements in violation of 15 U.S.C. § 1692e, and appropriate subsections thereof.

    (b)    Using an unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f, and appropriate subsections thereof.

90. ACAI and WINTERS violated the FDCPA. The violations by ACAI and WINTERS with respect to the Live Messages include, but are not limited to, the following:

    (a)    Placing telephone calls without providing meaningful disclosure of ACAI's identity as the caller in violation of 15 U.S.C. § 1692d(6).

    (b)    Failing to disclose in its initial communication with the consumer that ACAI is attempting to collect a debt and that any information obtained will be used for that purpose, which constitutes a violation of 15 U.S.C. § 1692e(11).

    (c)    Failing to disclose in all oral communications that ACAI is a debt collector in violation of 15 U.S.C. § 1692e(11).

    (d)    Conveying a false sense of urgency to consumers about the timeframe in which they have to respond concerning the alleged debt in violation

of 15 U.S.C. § 1692e(10).

91.     ACAI and WINTERS violated the FDCPA. The violations by ACAI and WINTERS with respect to the Defendants' Pre-Recorded Voice Message include, but are not limited to, the following:

(a)     Making false, deceptive, and misleading statements in violation of 15 U.S.C. § 1692e, and appropriate subsections thereof.

(b)     Making false, deceptive, and misleading representations or implications that the debt collector is vouched for, bonded by, or affiliated with the United States or any State in violation of 15 U.S.C. § 1692e(1).

(c)     Making false, deceptive, and misleading representations or implications in violation of 15 U.S.C. § 1692e(4) that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person when such action is unlawful and when in any event said Defendants never intended to take such action.

(d)     Making false threats to take action that cannot legally be taken or that is not intended to be taken in violation of 15 U.S.C. § 1692e(5).

(e)     Making false, deceptive, and misleading representations or implications in violation of 15 U.S.C. § 1692e(7) that the consumer

committed any crime or other conduct in order to disgrace the consumer.

(f)     Using an unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f, and appropriate subsections thereof.

## VIII.  SECOND CAUSE OF ACTION
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## (AGAINST K&A AND KALINA)

92.     Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint as if set forth at length herein.

93.     K&A and KALINA violated the FDCPA. The violations by K&A and KALINA with respect to their written communications in the form attached hereto as Exhibit B include, but are not limited to, the following:

(a)     Making false, deceptive, and misleading statements in violation of 15 U.S.C. § 1692e, and appropriate subsections thereof.

(b)     Making false, deceptive, and misleading representation or implications that in that these communications were drafted, or received meaningful review or involvement, by a licensed attorney prior to the mailing of said letters in violation of 15 U.S.C. § 1692e(3)

(c)     Using an unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f, and appropriate

subsections thereof.

94.    K&A and KALINA violated the FDCPA. The violations by K&A and KALINA with respect to the Live Messages include, but are not limited to, the following:

(a)    Placing telephone calls without providing meaningful disclosure of K&A's identity as the caller in violation of 15 U.S.C. § 1692d(6).

(b)    Failing to disclose in its initial communication with the consumer that K&A is attempting to collect a debt and that any information obtained will be used for that purpose, which constitutes a violation of 15 U.S.C. § 1692e(11).

(c)    Failing to disclose in all oral communications that K&A is a debt collector in violation of 15 U.S.C. § 1692e(11).

(d)    Conveying a false sense of urgency to consumers about the timeframe in which they have to respond concerning the alleged debt in violation of 15 U.S.C. § 1692e(10).

95.    K&A and KALINA violated the FDCPA. The violations by K&A and KALINA with respect to the Defendants' Pre-Recorded Voice Message include, but are not limited to, the following:

(a)    Making false, deceptive, and misleading statements in violation of 15 U.S.C. § 1692e, and appropriate subsections thereof.

(b)   Making false, deceptive, and misleading representations or implications that the debt collector is vouched for, bonded by, or affiliated with the United States or any State in violation of 15 U.S.C. § 1692e(1).

(c)   Making false, deceptive, and misleading representations or implications in violation of 15 U.S.C. § 1692e(4) that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person when such action is unlawful and when in any event said Defendants never intended to take such action.

(d)   Making false threats to take action that cannot legally be taken or that is not intended to be taken in violation of 15 U.S.C. § 1692e(5).

(e)   Making false, deceptive, and misleading representations or implications in violation of 15 U.S.C. § 1692e(7) that the consumer committed any crime or other conduct in order to disgrace the consumer.

(f)   Using an unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C.  §  1692f, and appropriate subsections thereof.

## IX.   PRAYER FOR RELIEF

96.     WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and in favor of the putative classes as follows:

A.     For the FIRST CAUSE OF ACTION:

(1)     An order certifying that the First Cause of Action may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing APOSTOLOU and the undersigned counsel to represent the First, Second, and Fifth Plaintiff Classes;

(2)     An award of actual damages for APOSTOLOU on his individual claims in an amount according to proof at trial pursuant to 15 U.S.C. § 1692k(a)(1);

(3)      An award of the maximum statutory damages for APOSTOLOU and the Class pursuant to 15 U.S.C. § 1692k(a)(2);

(4)     Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

(5)     For such other and further relief as may be just and proper.

B.     For the SECOND CAUSE OF ACTION:

(1)     An order certifying that the Second Cause of Action may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing APOSTOLOU and the undersigned counsel

to represent the Third, Fourth, and Fifth Plaintiff Classes;

(2)    An award of actual damages for APOSTOLOU on his individual claims in an amount according to proof at trial pursuant to 15 U.S.C. § 1692k(a)(1);

(3)     An award of the maximum statutory damages for APOSTOLOU and the Class pursuant to 15 U.S.C. § 1692k(a)(2);

(4)    Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

(5)    For such other and further relief as may be just and proper.

WACKS & HARTMANN, LLC

*/s/ Philip D. Stern*

Dated: May 17, 2008

PHILIP D. STERN
Attorney for Plaintiff, Mark A. Apostolou and all others similarly situated

## X.  DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE THAT Plaintiff demands a trial by jury against the Defendants, and each of them, for each cause of action so triable.

WACKS & HARTMANN, LLC

*/s/ Philip D. Stern*

Dated: May 17, 2008

PHILIP D. STERN
Attorney for Plaintiff, Mark A. Apostolou and all others similarly situated

# EXHIBIT "A"

**A.C.A. RECOVERY, INC.**
**38 E. RIDGEWOOD AVE.**
   **#395**
**RIDGEWOOD, NJ 07450**
**(800) 356-3713 * (201) 670-8851**

 **Norman G. Kalina**
   **of counsel**

May 18, 2007


       749736
       MARK APOSTOLOU
       33ROYALAVE

       LIVINGSTON, NJ. 07039


   YOUR account listed below has been assigned to us to COLLECT.

   YOU may not have intentionally neglected this obligation, but it is
past due and needs your prompt attention.

   At this time we ask that you either:

       1.    Remit payment in full to this office.
       2.    If you cannot pay in full at this time, please contact us;
             we may be able to work out a payment schedule.
       3.    If alledged debt is disputed or paid - Please notify us
             in writing.

Please contact: **MR. CUTLER**                              at: **800-356-3713**


Please note the FDCPA requirements 807 (11) and 809 below.

   Unless you notify this office within 30 days after receiving this
notice that you dispute the validity of the debt or any portion of it,
this office will assume this debt is valid.  If you notify this office
in writing within 30 days from receiving this notice, this office will
obtain verification of the debt or a copy of the judgment against you
and mail you a copy of such judgment or verification.  If you request
this office in writing within 30 days after receiving this notice,
this office will provide you with the name and address of original
creditor, if different from the current creditor.


| CLIENT-NAME | AGENCY | CLIENT-# | BALANCE |
|---|---|---|---|
| INSTANTCASH | 749736 | | $545.00 |
| | | TOTAL: | $545.00 |


       **We are debt collectors. This is an attempt to collect a debt.**
       **Any information obtained will be used for that purpose.**
                                               **7497361ST**

# EXHIBIT "B"

**Norman G. Kalina, Esq.**
38 E. Ridgewood Ave.
# 395
Ridgewood, NJ 07450
800-356-3713
201-670-8851   FAX 201-670-8271

June 22, 2007

MARK APOSTOLOU
33ROYALAVE
LIVINGSTON, NJ. 07039

Client:   **INSTANTCASH**
Amount due: **$545.00**

Dear MARK APOSTOLOU

Please be advised that this office represents the above named client in connection with an outstanding bill in the amounts of   **$545.00**.   Your account was placed with Accredited Collection Agency, and after numerous attempts, this account is still delinquent, which we trust is merely an oversight on your part.

My client provided services to you and you accepted these services in a enforceable contract in the amount of   **$545.00**

**You have both a moral and legal obligation to repay them.**

Please send payment in full to our office.   Make your money order to **Norman G. Kalina, Esq.**

If you wish to arrange a reasonable payment schedule, you may contact this office.

Very truly yours

_____
**Norman G. Kalina, Esq.**

We are debt collectors.   This letter is an attempt to collect a debt, and any information will be used for that purpose.

KAL-749736